IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARVEY WEAVER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JOHN PALAKOVICH, et al. | : | No. 10-3888 |

**MEMORANDUM**

J. WILLIAM DITTER, JR., J.                                        February 11, 2013

Presently before this court is a pro se petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Harvey Weaver and the response thereto. Weaver, who is currently incarcerated in the Somerset State Correctional Institution in Somerset, Pennsylvania, challenges his incarceration for involuntary deviate sexual intercourse. For the reasons that follow, the petition will be denied.

**FACTS AND PROCEDURAL HISTORY:**

The evidence presented at trial proved that Weaver and codefendant, Eric Alston, both drug traffickers, lured two teenaged girls to Philadelphia from Washington, D.C., then beat and sexually assaulted them for several hours inside an apartment in Southwest Philadelphia. After a jury trial before the Honorable Stanley L. Kubacki, Court of Common Pleas of Philadelphia County, Weaver was convicted of involuntary deviate sexual intercourse, possessing a controlled substance with intent to deliver, and criminal conspiracy. On October 4, 1988, Judge Kubacki sentenced Weaver to an aggregate term of 14 to 29 years of imprisonment. Weaver filed a direct appeal. On December 1, 1989,

the Pennsylvania Superior Court remanded Weaver's case for an evidentiary hearing on one claim pursuant to Batson v. Kentucky, 476 U.S. 79 (1986), and denied the remainder of his claims. The Pennsylvania Supreme Court denied allocatur on the rejected claims on January 22, 1991.

On June 26, 1991, following an evidentiary hearing, the trial court denied the Batson claim. The Superior Court affirmed on August 18, 1992. Commonwealth v. Weaver, 617 A.2d 394 (Pa. Super. 1992). The Pennsylvania Supreme Court denied allocatur on March 31, 1993. Commonwealth v. Weaver, 626 A.2d 1157 (Pa. 1993) (table).

Weaver then filed two petitions under the Pennsylvania Post-Conviction Hearing Act ("PCHA"), the predecessor of the current Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. 9541 et.seq. on December 14, 1993 and May 19, 1994. The PCHA court erroneously dismissed both of Weaver's petitions as unripe, pending resolution of his direct appeal. Weaver did not appeal the dismissal of either petition.

On January 10, 1997, Weaver filed his first petition for writ of habeas corpus, raising five claims, including his Batson claim. On July 30, 1997, United States Magistrate Judge Thomas J. Reuter issued a report and recommendation recommending Weaver's Batson claim be dismissed as meritless and his other claims be dismissed as procedurally defaulted. On August 26, 1997, the Honorable John R. Padova approved and adopted the report and recommendation and denied a certificate of appealability.

2

On March 4, 1997, while his first habeas petition was pending, Weaver filed his third post-conviction petition. The state court again erroneously dismissed the petition as unripe on May 4, 1997. Weaver did not appeal this decision to the Superior Court. On January 11, 2000, Weaver filed his fourth post-conviction petition. The state court dismissed the petition as untimely on June 14, 2000. Weaver did not appeal this decision to the Superior Court.

On March 9, 2001, Weaver filed his fifth post conviction petition. Counsel was appointed and on June 20, 2002, counsel filed an amended petition asserting that trial counsel was ineffective for failing to obtain and present to the jury the results of the rape kit referenced in the police report. On February 24, 2003, the PCRA court ordered the Commonwealth to investigate whether an analysis of the rape kit existed. On June 27, 2003, the Commonwealth responded that the results of the rape kit showed that swabs taken from the victim, Patricia Mason, tested positive for sperm.

The PCRA court held evidentiary hearings on November 6, 2003, and January 29, 2004. At trial, Weaver testified that he never sexually assaulted Ms. Mason and that they had consensual sex the night before the incident. Ms. Mason testified that she slept in the same bed as Weaver but that they did not engage in intercourse. At the PCRA court hearing, Weaver argued that if the rape kit had been available at trial, he would have been able to impeach the credibility of Ms. Mason based on the results and the outcome of the trial would have been different. On March 22, 2004, the PCRA court ordered a new trial

3

for Weaver on the involuntary deviate sexual intercourse charge.

On March 30, 2004, the Commonwealth filed a petition for reconsideration asserting that the PCRA court had no jurisdiction to consider Weaver's untimely petition and therefore could not order a new trial. On April 29, 2004, the PCRA court granted the Commonwealth's petition, rescinded its order for a new trial, and dismissed Weaver's petition.

Weaver, represented by new counsel, appealed to the Superior Court alleging that PCRA counsel had been ineffective for failing to assert that Weaver had met an exception to the statute of limitations. On July 14, 2006, the Superior Court found that PCRA counsel had been ineffective in this regard and remanded the matter to the PCRA court to address the statutory exceptions to the PCRA's jurisdictional time bar.

On April 16, 2007, counsel filed an amended PCRA petition, asserting that the Commonwealth violated his due process rights under Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose the results of the rape kit performed on the victim. On November 9, 2007, the PCRA court dismissed Weaver's petition as untimely.[1] Weaver appealed the PCRA court's order and on July 29, 2009, the Superior Court affirmed the denial of PCRA relief, ruling that Weaver failed to meet any of the statutory exceptions to the PCRA time bar and finding that the court was therefore without jurisdiction to consider the merits of Weaver's Brady claim. Weaver did not appeal to the Pennsylvania

---

[1] PCRA counsel failed to address the exceptions to the PCRA time bar under 42 Pa.C.S. § 9545(b)(2).

4

Supreme Court.

On July 16, 2010, Weaver filed the instant petition. The matter was referred to the Court of Appeals for the Third Circuit for a determination as to whether Weaver would be granted leave to file a second habeas petition. On December 23, 2010, the Court of Appeals granted Weaver leave to proceed on his Brady claim. Respondents have filed an answer asserting that Weaver is not entitled to federal habeas relief because his claim is time barred, procedurally defaulted and meritless.

**DISCUSSION:**

**A.    Timeliness**

Section 101 of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), effective April 24, 1996, imposes a one (1) year limitation period to applications for writ of habeas corpus filed by persons in state custody. 28 U.S.C.A. § 2244(d)(1). Section 2244, as amended, provides that the one (1) year limitation period shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by state action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made

> retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The amended statute also provides that the time during which a properly filed application for state post-conviction or other collateral review is pending shall not be counted toward any period of limitation. 28 U.S.C. § 2244(d)(2).

In the instant case, the applicable starting point for the statute of limitations is "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Weaver asserts that his Brady claim should not be considered time barred as this claim involves new facts which could not have been previously discovered. See 28 U.S.C. § 2244(d)(1)(D). Respondents assert that the factual predicate of Weaver's claim, the results of the rape kit performed on Patricia Mason, could have been discovered prior to trial with a reasonable amount of due diligence. I agree that this evidence was readily available at the time of trial as the existence of the rape kit was noted on the police report and it was entered into evidence at trial. See N.T. 6/24/88, at 43-44. Therefore, Weaver does not satisfy the due diligence standard of 28 U.S.C. § 2244(d)(1)(D). Consequently, Weaver would be barred from presenting his claims under § 2254, unless the claim in the instant petition is subject to equitable tolling.

Equitable tolling is available in the context of a federal habeas petition in

appropriate cases.  See Holland v. Florida, 130 S.Ct. 2549, 2560 (2010).  A petitioner bears the burden of establishing his entitlement to equitable tolling through two (2) elements: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing."  Id. at 2562 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  There are no bright lines in determining whether equitable tolling is warranted in a given case.  Rather, the particular circumstances of each petitioner must be taken into account.  Id. at 2563; Pabon v. Mahoney, 654 F.3d 385, 399 (3d Cir. 2011).  As the Court in Holland explained, while prior decisions provide guidance, rigid reliance on precedent should be avoided.  Id.  In each case there is a need for flexibility, avoiding mechanical rules, and awareness that specific circumstances often hard to predict in advance, could warrant special treatment in an appropriate case.  Id.

  Weaver has presented evidence that he diligently pursued his claims and has established "extraordinary" circumstances which would justify application of equitable principles.  Weaver's first four post conviction petitions were erroneously dismissed by the court over a six and one-half year period.  His final post-conviction petition was not adjudicated on the merits of his claims as the petition was found to be time barred.  Weaver's Batson claim was reviewed by this court in his first habeas petition, but the other claims asserted in that petition were not reviewed as they were not exhausted in the state court.  Clearly, Weaver diligently pursued his rights and tried to have these claims

7

reviewed. I do find the instant matter to be one of the "rare situation[s] where equitable tolling is demanded by sound legal principals as well as the interests of justice." See Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999). Therefore, I find that the rigid application of the limitation period unfair. Consequently, I do not find Weaver's petition to be untimely.

B. **Procedural Default**

A federal court, absent unusual circumstances, should not entertain a petition for writ of habeas corpus unless the petitioner has first satisfied the exhaustion requirement of 28 U.S.C. § 2254. "The exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (quoting Caswell v. Ryan, 953 F.2d 853, 856 (3d Cir. 1992)). A petitioner typically exhausts his federal claims by fairly presenting each claim at each stage of the state's established review process. Villot v. Varner, 373 F.3d 327, 337 (3d Cir. 2004); see also Evans v. Court of Common Pleas, Del. Co., Pa., 959 F.2d 1227, 1231 (3d Cir. 1992) ("the same method of legal analysis must be available to the state court as will be employed by the federal court"). The habeas corpus petitioner has the burden of proving exhaustion of all available state remedies. Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C.A. § 2254). A habeas petitioner who has failed to meet the state's procedural requirements for presenting his

8

federal claims has deprived the state courts of an opportunity to address those claims in the first instance. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (citing Coleman v. Thompson, 501 U.S. 722, 732 (1991)).

Even if I excuse Weaver from exhausting his state remedies for his Brady claim, a return to state court would be futile due to "an absence of available State corrective process." Lines, 208 F.3d at 162. The only way in which Weaver could present this claim in the state court at this time is by filing another PCRA petition. See Szuchon v. Lehman, 273 F.3d 299, 324 n.14 (3d Cir. 2001). However, any such petition would be time-barred by the PCRA's statute of limitations.[2]

Although exhaustion is excused, Weaver is considered to have procedurally defaulted his claim because state procedural rules bar him from seeking further relief in state courts. Keller v. Larkins, 251 F.3d 408, 415 (3d Cir. 2001). The principal exception to this general rule precluding federal review of habeas claims that have been procedurally defaulted is for petitioners who can show "cause and prejudice" for the procedural default or that a "miscarriage of justice" will occur absent review. Hubbard v.

---

[2] Pursuant to the amended PCRA, effective January 16, 1996, collateral actions must be filed within one (1) year of the date the conviction at issue becomes final. 42 Pa. Cons. Stat. Ann. § 9545(b)(1); see also, e.g., Lines, 208 F.3d at 164 n.17 (noting that the Pennsylvania Supreme Court has held that the time restrictions for seeking relief under the PCRA are jurisdictional) (citing Commonwealth v. Banks, 726 A.2d 374 (Pa. 1999)). For purposes of the PCRA, a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of Pennsylvania and the Supreme Court of the United States, or at the expiration of time for seeking the review. 42 Pa. Cons. Stat. Ann. § 9545(b)(3). Weaver's conviction became final in 1993.

9

Pinchak, 378 F.3d 333, 338 (3d Cir. 2004); Cristin v. Brennan, 281 F.3d 404, 414 (3d Cir. 2002). The Supreme Court has delineated what constitutes "cause" for the procedural default: the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Werts, 228 F.3d at 192-193 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). With regard to the prejudice requirement, the habeas petitioner must prove "'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Id. at 193 (citing Carrier, 477 U.S. at 494). This standard essentially requires the petitioner to show he was denied "fundamental fairness" at trial. Id.

Weaver has provided this court with an explanation for his failure to properly present this claim to the state courts. As discussed above, Weaver filed multiple post-conviction petitions which were erroneously dismissed and as a result, the merits of this claim have never been considered by the state court. I do not find this to be a situation where the *petitioner* has "deprived the state courts of an opportunity to address [his] claim." See Coleman, 501 U.S. at 732. As a result, I find that he has shown cause to excuse his procedural default. Carrier, 477 U.S. at 488. However, I do not find that Weaver has satisfied the prejudice requirement because he failed to show that errors at trial "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Werts, 228 F.3d at 193. Ultimately, as discussed

below, Weaver's Brady claim is without merit and therefore, he cannot show requisite prejudice.

Weaver asserts that the prosecution violated the due process standards enunciated in Brady, 373 U.S. at 87, by withholding favorable evidence, specifically the results of the rape kit performed on victim Patricia Mason. In Brady, the Supreme Court held that "the suppression of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. In subsequent cases, the Supreme Court recognized that, regardless of whether the defendant made a request for evidence, due process is violated when the prosecution suppresses exculpatory or impeachment evidence, and "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Bagley, 473 U.S. 667, 676-82 (1985); see also Stickler v. Greene, 527 U.S. 263, 289 (1999).

I find that there was no Brady violation because the information Weaver claims the government withheld was readily available to him. The rationale underlying Brady is not to supply a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the Government. Dukes v. Pappas, 405 Fed.Appx. 666, 669 (3d Cir. 2010). Brady does not compel the government to furnish a defendant with information which he already has or with any reasonable

diligence can obtain himself. United States v. Pellullo, 399 F.3d 197, 213 (3d Cir. 2005).

Weaver does not assert that he was unaware of the existence of the rape kit at the time of trial. The fact that a rape kit was collected was listed on the police report, copies of which were provided to counsel and which were admitted into evidence at trial. See N.T. 6/24/88, at 43-44; Philadelphia Police Department Form 75-49, Attached as Exhibit G of Respondents' Response. The results of the rape kit could have been obtained with a reasonable amount of due diligence. The government can not be found to have suppressed evidence when the existence of that evidence was both disclosed and admitted into evidence.

It is important to note that the results of the rape kit could only have been used by counsel to impeach the testimony of Ms. Mason. Weaver's assertion that the results of the rape kit prove his innocence is not accurate. Weaver's conviction for IDSI related to his forcing the victim to perform oral sex on him in front of his codefendant and the other victim, Tracie Brannum. Ms. Mason's testimony was supported by Ms. Brannum's testimony. See N.T. 6/27/88, at 290-299. Further, defense counsel repeatedly attempted to impeach Ms. Mason's testimony. See N.T. 6/27/88, at 142-223. I find that additional impeachment material would have been cumulative and not the type of evidence that would have changed the result of the proceeding as required by Brady.

**CONCLUSION:**

After close and objective review of the arguments and evidence, I conclude that

Weaver's petition for writ of habeas corpus is meritless. Accordingly, Weaver's petition will be denied.

Similarly, because Weaver's claims are both legally and factually meritless, there is no need to conduct an evidentiary hearing, as it would not change the outcome of this matter. <u>See</u> 28 U.S.C. § 2254(e)(2); <u>see also</u> <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) ("an evidentiary hearing is not required on issues that can be resolved by reference to the state court record") (citations omitted).

An appropriate order follows.